**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**IN NASHVILLE**

TAS RIGHTS MANAGEMENT, LLC,

                        Plaintiff,

       v.

ANTHONY DAIS, LILIA KATERINE
BEDOYA AGUDELO, THOMAS
BAMBERGER, ALBERTO A. LOREDO
BARROS, REGINALD BLOCKER JR.,
DAVID CASTELAN, JOHN PAUL
CLARK, RICHIE CLAY, BOBBY RAY
CRISS, DANIEL DARDOV, DELCID
CANALES ELIEZER, EDGAR IVAN
RAMIREZ GARCIA, FRANK GUERRO,
DAMION HAZEL, JONATHAN JACOB
HEARN, THOMAS DONALD INGRAM,
KYLE JAMES, ALEX KEANE, BRAULIO
A. LAGRANGE, GEORGINA MARISCAL,
ANTWAN BRYANT MCDANIEL, EDWIN
MESIA, DARRYL MULLIGAN, LIONEL
NELSON, KIMBERLY PAUSZEK,
ROMEO RAMOS, TYRONE SQUIRES,
RUSSELL THRAILKILL, DAVID FRISCO
TORRES, JAVEN ISIDRO VELASQUEZ,
BENJAMIN WALKER, KIREN WEST,
RUTH WHITE, and JOHN/JANE DOES 1–
109,

                        Defendants.

**Case No. 3:23-cv-00158**

**Honorable Eli J. Richardson**

**JURY DEMAND**

## VERIFIED AMENDED COMPLAINT

     Plaintiff TAS Rights Management, LLC ("Plaintiff") by and through its undersigned

counsel brings this Action against the defendants Anthony Dais ("Dais"), Lilia Katerine Bedoya

Agudelo ("Agudelo"), Thomas Bamberger ("Bamberger"), Alberto A. Loredo Barros ("Barros"),

Reginald Barron Blocker Jr. ("Blocker"), David Castelan ("Castelan"), John Paul Clark ("Clark"),

1

Richie Clay ("Clay"), Bobby Ray Criss ("Criss"), Daniel Dardov ("Dardov"), Delcid Canales Eliezer ("Eliezer"), Edgar Ivan Ramirez Garcia ("Garcia"), Frank Guerro ("Guerro"), Damion Hazel ("Hazel"), Jonathan Jacob Hearn ("Hearn"), Thomas Donald Ingram ("Ingram"), Kyle James ("James"), Alex Keane ("Keane"), Braulio LaGrange ("LaGrange"), Georgina Mariscal ("Mariscal"), Antwan Bryant McDaniel ("McDaniel"), Edwin Mesia ("Mesia"), Darryl Mulligan ("Mulligan"), Lionel Nelson ("Nelson"), Kimberly Pauszek ("Pauszek"), Romeo Ramos ("Ramos"), Tyrone Squires ("Squires"), Russell Thrailkill ("Thrailkill"), David Frisco Torres ("Torres"), Javen Velasquez ("Velasquez"), Benjamin Walker ("Walker"), Kiren West ("West"), Ruth White ("White"), and John/Jane Does 1–109 (together "Defendants") and alleges as follows:

1.    This is an anti-counterfeiting and anti-infringement action against those who manufacture, buy, distribute, and sell, products bearing counterfeit/infringing versions of the TAYLOR SWIFT® Trademarks, the TAYLOR SWIFT THE ERAS TOUR™ Trademarks, and several additional registered trademarks, as defined herein.

2.    Plaintiff is the owner of and has the right to enforce a number of trademarks related to Taylor Swift, as well as common-law rights thereto in the United States and around the world, including without limitation:

    a.  the TAYLOR SWIFT® Trademarks (the "TAYLOR SWIFT Trademarks");

    b.  the SPEAK NOW® Trademarks, the 1989® Trademarks, the REPUTATION® Trademarks, the LOVER® Trademarks, the FOLKLORE® Trademarks, and the SWIFTIE® Trademarks (the "Additional Trademarks") (the TAYLOR SWIFT Trademarks and the Additional Trademarks are, collectively, the "Registered SWIFT Trademarks"); and

2

c. the TAYLOR SWIFT THE ERAS TOUR™ Trademarks (the "TOUR Trademarks") (the Registered SWIFT Trademarks and the TOUR Trademarks are, collectively, the "SWIFT Trademarks").

3. Since at least 2009, Plaintiff has taken steps to stop the manufacture and sale of unauthorized products bearing counterfeit versions of the Registered SWIFT Trademarks at or near concert venues.

4. On five previous occasions Plaintiff has requested and obtained orders from this judicial district, including most recently in Case No. 3:18-cv-0393 (Trauger, J.), granting the seizure of products in advance of Ms. Swift's concert tours bearing counterfeit TAYLOR SWIFT Trademarks and certain Additional Trademarks where those sales occurred outside of the tour venues.[1]

5. Based upon information and belief, past experience, and current online infringing activity, Plaintiff expects that Defendants will (and did) distribute, sell, and offer for sale counterfeit merchandise ("Counterfeit Goods") during the Taylor Swift | The Eras Tour ("The Tour") because Plaintiff has seen the sale, offering for sale, and distribution of products bearing counterfeit versions of the TAYLOR SWIFT Trademarks and/or certain Additional Trademarks during previous concert tours, and the continued offering for sale and distribution of Counterfeit Goods. Further, Plaintiff has already seized from Defendants thousands of unauthorized merchandise items being sold featuring certain Registered SWIFT Trademarks without authorization during The Tour.

---

[1] Plaintiff also previously requested (and received) a Seizure Order (ECF 9) and Extended Seizure Order (ECF 203) in this Action.

6.     Plaintiff has not authorized any Defendants to manufacture, distribute, offer for sale, or sell any Counterfeit Goods.

7.     There are distinct physical and quality differences between Plaintiff's authentic merchandise and Defendants' Counterfeit Goods.   These differences are obvious to Plaintiff. Defendants' Counterfeit Goods are likely to be (and were) of poor quality and fail to comply with the quality and style standards established by Plaintiff.   Defendants' Counterfeit Goods are also likely to be priced lower than Plaintiff's authentic goods.

8.     Plaintiff has and will further irretrievably lose the ability to control the quality of products sold under the SWIFT Trademarks, and the TAYLOR SWIFT® brand more broadly, when the vendors selling Counterfeit Goods gather near the concert venues on The Tour.

9.     Plaintiff brings this lawsuit for:

    a.   Trademark infringement and use of counterfeit mark in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114);

    b.   Trademark infringement, in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a));

    c.   Trademark dilution, in violation of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c));

    d.   Violation of Tennessee Consumer Protection Act of 1977 (TENN. CODE. ANN. § 47-18-101 *et seq.*); and

    e.   Violation of the Tennessee Personal Rights Protection Act of 1984 (TENN. CODE. ANN. § 47-25-1101 *et seq.*).

## THE PARTIES

10.     Plaintiff TAS Rights Management, LLC is a limited liability company organized and existing pursuant to the laws of the State of Tennessee with its principal place of business in Nashville, Tennessee.

11.     Plaintiff is the owner of the SWIFT Trademarks.

12.     Defendant Dais made efforts to sell counterfeit goods in Nashville, Tennessee. Upon information and belief, Dais is a resident of Indiana.

13.     Defendant Agudelo made efforts to sell counterfeit goods in Miami, Florida. Upon information and belief, Agudelo is a resident of California.

14.     Defendant Bamberger made efforts to sell counterfeit goods in Tampa, Florida. Upon information and belief, Bamberger is a resident of New York.

15.     Defendant Barros made efforts to sell counterfeit goods in Miami, Florida. Upon information and belief, Barros is a resident of Florida.

16.     Defendant Blocker made efforts to sell counterfeit goods in Houston, Texas. Upon information and belief, Blocker is a resident of Texas.

17.     Defendant Castelan made efforts to sell counterfeit goods in Cincinnati, Ohio; Denver, Colorado; and Los Angeles, California. Upon information and belief, Castelan is a resident of Florida.

18.     Defendant Clark made efforts to sell counterfeit goods in Seattle, Washington. Upon information and belief, Clark is a resident of Oregon.

19.     Defendant Clay made efforts to sell counterfeit goods in Glendale, Arizona. Upon information and belief, Clay is domiciled in the United States.

20.     Defendant Criss made efforts to sell counterfeit goods in Seattle, Washington; Kansas City, Missouri; Pittsburgh, Pennsylvania; Cincinnati, Ohio; and Detroit, Michigan. Upon information and belief, Criss is a resident of Florida.

21.     Defendant Dardov made efforts to sell counterfeit goods in Tampa, Florida. Upon information and belief, Dardov is a resident of Florida.

22.     Defendant Eliezer made efforts to sell counterfeit goods in Tampa, Florida. Upon information and belief, Eliezer is a resident of California.

23.     Defendant Garcia made efforts to sell counterfeit goods in Tampa, Florida. Upon information and belief, Garcia is a resident of California.

24.     Defendant Guerro made efforts to sell counterfeit goods in Atlanta, Georgia. Upon information and belief, Guerro is a resident of Florida.

25.     Defendant Hazel made efforts to sell counterfeit goods in Houston, Texas. Upon information and belief, Hazel is domiciled in the United States.

26.     Defendant Hearn made efforts to sell counterfeit goods in Miami, Florida. Upon information and belief, Hearn is a resident of Ohio.

27.     Defendant Ingram made efforts to sell counterfeit goods in Atlanta, Georgia and Tampa, Florida. Upon information and belief, Ingram is a resident of Florida.

28.     Defendant James made efforts to sell counterfeit goods in Houston, Texas. Upon information and belief, James is a resident of Texas.

29.     Defendant Keane made efforts to sell counterfeit goods in Tampa, Florida.  Upon information and belief, Keane is a resident of Florida.

30.     Defendant LaGrange made efforts to sell counterfeit goods in Tampa, Florida. Upon information and belief, LaGrange is a resident of New York.

6

31.     Defendant Mariscal made efforts to sell counterfeit goods in Houston, Texas. Upon information and belief, Mariscal is a resident of California.

32.     Defendant McDaniel made efforts to sell counterfeit goods in Los Angeles, California. Upon information and belief, McDaniel is a resident of California.

33.     Defendant Mesia made efforts to sell counterfeit goods in Denver, Colorado. Upon information and belief, Mesia is domiciled in the United States.

34.     Defendant Mulligan made efforts to sell counterfeit goods in Pittsburgh, Pennsylvania. Upon information and belief, Mulligan is a resident of Pennsylvania.

35.     Defendant Nelson made efforts to sell counterfeit goods in Las Vegas, Nevada. Upon information and belief, Nelson is domiciled in the United States.

36.     Defendant Pauszek made efforts to sell counterfeit goods in Indianapolis, Indiana. Upon information and belief, Pauszek is a resident of Indiana.

37.     Defendant Ramos made efforts to sell counterfeit goods in Tampa, Florida. Upon information and belief, Ramos is a resident of Florida.

38.     Defendant Squires made efforts to sell counterfeit goods in Atlanta, Georgia. Upon information and belief, Squires is a resident of New York.

39.     Defendant Thrailkill made efforts to sell counterfeit goods in Las Vegas, Nevada. Upon information and belief, Thrailkill is a resident of California.

40.     Defendant Torres made efforts to sell counterfeit goods in Tampa, Florida. Upon information and belief, Torres is a resident of Florida.

41.     Defendant Velasquez made efforts to sell counterfeit goods in Houston, Texas. Upon information and belief, Velasquez is a resident of Texas.

42.     Defendant Walker made efforts to sell counterfeit goods in Las Vegas, Nevada. Upon information and belief, Walker is a resident of California.

43.     Defendant West made efforts to sell counterfeit goods in Houston, Texas. Upon information and belief, West is a resident of New York.

44.     Defendant White made efforts to sell counterfeit goods in Detroit, Michigan. Upon information and belief, White is a resident of Michigan.

45.     John/Jane Does 1–109 made efforts to sell counterfeit goods in Glendale, Arizona; Las Vegas, Nevada; Tampa, Florida; Houston, Texas; Atlanta, Georgia; Nashville, Tennessee; Philadelphia, Pennsylvania; East Rutherford, New Jersey; Chicago, Illinois; Detroit, Michigan; Cincinnati, Ohio; Seattle, Washington; Santa Clara, California; Los Angeles, California; Miami, Florida, and New Orleans, Louisiana.  John/Jane Does 1–109 refused to provide any personal identifiable information despite their obligation to do so in the Court's Seizure Order and Extended Seizure Order.

## JURISDICTION AND VENUE

46.     This Court has subject matter jurisdiction over Plaintiff's Lanham Act claims under 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121.

47.     This Court has subject matter jurisdiction over Plaintiff's Tennessee law claims under 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a).

48.     Upon information and belief, Defendants are or will be subject to personal jurisdiction in the State of Tennessee, as Defendants have engaged or will engage in acts or omissions inside and/or outside of Tennessee causing injury within Tennessee, and Defendants are or will be present in and about this judicial district in connection with the claims asserted in this Action, and specifically in connection with three Tour shows in this district. Defendants have and

8

will engage in manufacturing, distributing, marketing, and/or selling counterfeit goods, as further described in this Amended Complaint, in this State and elsewhere in interstate commerce, and will continue these activities during all times relevant to this Action.

49.     Venue is proper in this judicial district under 28 U.S.C. § 1391, in that Plaintiff resides in this judicial district, a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred here and will occur in this judicial district before, during, and after the three Tour shows here, Defendants have caused and will continue to cause injury to Plaintiff in this judicial district, Defendants will be and were present in and about this judicial district in connection with the claims asserted in this Action, and Defendants are or will be otherwise subject to personal jurisdiction in this Court.

## STATEMENT OF FACTS

### Plaintiff and the SWIFT Trademarks

50.     Plaintiff is the owner of the trademark rights, and is the administrator of the name, and likeness rights of Taylor Swift, in the United States and throughout the world.

51.     Taylor Swift ("Ms. Swift") is a world-renowned singer-songwriter, performer, and entertainer.

52.     Ms. Swift provides and promotes products and services in the United States, and throughout the world, under her name, Taylor Swift, and under other trademarks and service-marks.

53.     Since October 2006, Ms. Swift and her licensees have used the name "Taylor Swift" as a trademark and service-mark for many goods and services, including but not limited to sound recordings, compact discs, clothing, accessories, and entertainment services in the nature of live musical performances.

9

54.    The TAYLOR SWIFT® word trademarks, as well as the below TAYLOR SWIFT® design trademarks, cover various goods and services on the U.S. Patent and Trademark Office ("USPTO") Principal Register.

*Taylor Swift*

55.    The TAYLOR SWIFT® word trademarks and design trademarks (collectively, the "TAYLOR SWIFT Trademarks") are summarized in **Exhibit A** hereto.  True copies of USPTO records reflecting Principal Register registrations of the TAYLOR SWIFT Trademarks are attached hereto as **Exhibit B**.

56.    The TAYLOR SWIFT Trademarks appear alone or in combination on Plaintiff's products.

57.    Plaintiff is the owner of the exclusive rights to the TAYLOR SWIFT THE ERAS TOUR™ trademarks pending with the USPTO (the "TOUR Trademarks"). The TOUR Trademarks are summarized in **Exhibit C** hereto.  True copies of USPTO records relating to the TOUR Trademarks are attached hereto as **Exhibit D**.

58.    The Tour Trademarks appear alone or in combination on Plaintiff's products.

59.    Plaintiff is also the owner of several additional registered trademarks that appear alone or in combination on Plaintiff's products.  Those trademarks include the SPEAK NOW® Trademarks, the 1989® Trademarks, the REPUTATION® Trademarks, the LOVER® Trademarks, the FOLKLORE® Trademarks, and the SWIFTIE® Trademarks (referred to collectively as the "Additional Trademarks").

60.     The Additional Trademarks are summarized in **Exhibit E** hereto.  True copies of USPTO records reflecting Principal Register registrations of the Additional Trademarks are attached hereto as **Exhibit F**.

61.     As noted above, the TAYLOR SWIFT Trademarks, the TOUR Trademarks, and the Additional Trademarks are referred to collectively herein as "the SWIFT Trademarks."

## The Distinctiveness of the SWIFT Trademarks

62.     The above SWIFT Trademarks have been continuously and exclusively used on, and in connection with, superior brand products and services related to Ms. Swift.

63.     The SWIFT Trademarks have become well known nationwide in conjunction with authentic products and services related to Ms. Swift, with such products and services being offered at live concerts and online since at least 2006.

64.     In the United States alone, there have been 70 billion streams and 53.7 million albums sold under the SWIFT Trademarks, as of February 27, 2025.

65.     "Taylor Swift" concerts have been held in at least 40 U.S. states, and in the District of Columbia.

66.     Fifteen highly successful full studio albums have also been released under the SWIFT Trademarks: *Taylor Swift*, *Fearless*, *Speak Now*, *RED*, *1989*, *reputation*, *Lover*, *folklore*, *evermore*, *Fearless (Taylor's Version)*, *Red (Taylor's Version)*, *Midnights*, *Speak Now (Taylor's Version)*, *1989 (Taylor's Version)*, and *The Tortured Poets Department*.

67.     All fifteen full studio albums released under the SWIFT Trademarks have sold tens of millions of copies in the United States alone, in addition to millions of worldwide sales.

11

68.     Many of the albums released under the SWIFT Trademarks have also charted at No. 1 on the *Billboard Top 200*, and multiple of these albums were named the best-selling album of the year within the year they were released.

69.     Merchandise branded with the SWIFT Trademarks is sold in the United States, and worldwide, in direct affiliation with Ms. Swift's name and image, at concert venues in conjunction with Ms. Swift's live performances, at the official Taylor Swift online store (https://store.taylorswift.com) and at authorized third-party brick-and-mortar and online retailers. This merchandise includes products described within the Certificates of Registration and pending Applications attached as **Exhibits B, D**, and **F**.

70.     The SWIFT Trademarks, and other related trademarks more broadly, have been featured in prominent product endorsements and co-branding ventures in the United States, and throughout the world, with the following companies: American Greetings & Papyrus, AT&T, Circuit City Stores, Inc., Comcast Corporation, CoverGirl, Elizabeth Arden, Inc., Keds, LLC, Papa John's, The Coca Cola Company, Procter & Gamble Co., UPS, Unilever, Capital One, Disney, Netflix, Stella McCartney, Target, and Urban Outfitters, among others.

71.     At all relevant times, the SWIFT Trademarks have been used in commerce with authentic products and services related to Ms. Swift in the United States and have been extensively advertised and promoted throughout the world.

72.     Ms. Swift's likeness and certain SWIFT Trademarks have appeared on the covers of leading magazine publications regularly over the years, including *Vogue*, *TIME*, *Billboard*, *Rolling Stone*, *Allure*, *Cosmopolitan*, *Cosmo Girl*, *Elle*, *Glamour*, *InStyle*, and *Vanity Fair*, among others, with Ms. Swift being named Billboard Magazine's Woman of the Decade in 2014, one of

12

TIME Magazine's People of the Year in 2017, one of TIME Magazine's 100 Most Influential People in 2019, and TIME Magazine's Person of the Year in 2023.

73.     As a result of the above worldwide use and recognition, the extensive and copious sale of goods and/or services offered under the SWIFT Trademarks, and the universal recognition of the SWIFT Trademarks with consumers, the SWIFT Trademarks have become legally famous.

74.     Ms. Swift has also extensively appeared on television, including in connection with live musical performances, as well as in movies, and has been nominated for and won numerous professional awards and recognitions in the United States and internationally.

75.     Among the many awards and recognitions Ms. Swift has received include: *GRAMMY Awards* (14 wins—including the highest number of Album of the Year wins for any female (4)—and 58 nominations), *American Music Awards* (40 wins, 48 nominations), *Academy of Country Music Awards* (8 wins, 31 nominations), *Country Music Association Awards* (12 wins, 28 nominations), *People's Choice Awards* (20 wins, 39 nominations), *MTV Video Music Awards* (30 wins, 70 nominations), *Teen Choice Awards (*26 wins, 66 nominations*)*, and 8 *Guinness World Records* (including for *"Biggest-Selling Album Worldwide For A Solo Artist"*).

## The Willful Counterfeiting of the Registered SWIFT Trademarks

76.     Due to the goodwill associated with the SWIFT Trademarks, as well as the goodwill and popularity associated with Ms. Swift, the Registered SWIFT Trademarks have been subject to widespread and constant counterfeiting.

77.     Notably the Registered SWIFT Trademarks have been counterfeited consistently in connection with Ms. Swift's headlining concert tours.

78. Since at least 2009, when Ms. Swift launched her first headlining tour, the "Fearless Tour," counterfeiters have created and sold merchandise bearing counterfeit versions of the TAYLOR SWIFT Trademarks at or near tour concert venues.

79. During Ms. Swift's additional headlining tours that followed the Fearless Tour—the "Speak Now World Tour," "The RED Tour," "The 1989 World Tour," and the "reputation Stadium Tour"—unauthorized merchandise bearing counterfeit versions of certain Registered SWIFT Trademarks has also appeared outside tour venues throughout the country. Additionally, during The Tour—Ms. Swift's current tour and subject of this Action—thousands of unauthorized merchandise bearing counterfeit versions of certain Registered SWIFT Trademarks have appeared outside tour venues throughout the country.

80. Vendors during the Fearless Tour, Speak Now World Tour, The RED Tour, The 1989 World Tour, the reputation Stadium Tour, and The Tour (collectively, "Tours"), attempted to sell merchandise bearing counterfeit versions of certain Registered SWIFT Trademarks to Ms. Swift's fans.

81. In an effort to stop vendors of counterfeit merchandise during the Tours, in advance of the Tours, Plaintiff filed actions against counterfeiting "John Doe" defendants, and obtained orders to seize the counterfeit goods. *See* **Exhibit G** (copies of prior seizure orders, including this Court's Seizure Order (ECF 9) and Extended Seizure Order (ECF 203), and other injunctive orders obtained by Plaintiff to prevent counterfeiting of the TAYLOR SWIFT Trademarks and certain Additional Trademarks).

82. Seizure orders obtained to stop the sale of counterfeit goods outside of The Tour venues have resulted in the seizure of over 13,000 unauthorized products bearing counterfeit

14

versions of the Registered SWIFT Trademarks—including almost 7,000 unauthorized products from this Court's Seizure Order (ECF 9) and Extended Seizure Order (ECF 203) alone.

83.     The counterfeit products bearing Registered SWIFT Trademarks do not originate with the Plaintiff or under license from the Plaintiff.

84.     Based on past experience at concert venues of Ms. Swift's Tours, Defendants' counterfeiting is willful.  This is further evidenced by Defendants hopping from concert-to-concert on The Tour.

85.     Upon information and belief, Defendants know the counterfeit products bearing Registered SWIFT Trademarks they sell are counterfeit and infringing, but they sell them anyway.

86.     When approached counterfeiters have and will either:

    a.  Quickly hide or discard the counterfeit merchandise;

    b.  Flee the concert area;

    c.  Ignore requests for identification and requests to abandon the concert premises;

    d.  Ignore requests to turn over the counterfeit goods; and/or

    e.  Provide false or incomplete identification and personal information.

87.     The above evasive measures are taken by counterfeiters in an effort to avoid detection and liability for their actions.

**Taylor Swift | The Eras Tour**

88.     Ms. Swift's current tour, Taylor Swift | The Eras Tour, began in the United States on March 17, 2023, and ended on November 3, 2024.  On May 5, 6, and 7, 2023, The Tour played

15

three shows at Nissan Stadium in Nashville, Tennessee. A complete schedule of the United States leg of The Tour is attached as **Exhibit H**.

89. During The Tour, authorized vendors have offered and will offer for sale merchandise bearing the SWIFT Trademarks, or the photograph, image, or likeness of Ms. Swift ("Taylor Swift Merchandise").

90. The Taylor Swift Merchandise offered to the public during The Tour has included and will include shirts, T-shirts, sweatshirts, sweatpants, hoodies, ponchos, bandanas, posters, stickers, notebooks, coloring books, pencils, tapestries, bags, luggage tags, guitar picks, beverageware, jewelry, blankets, lanyards, pins, vinyl slip mats, glow sticks, and accessories for electronic devices, among others. Examples of the Taylor Swift Merchandise are below:

 



**Depicting Taylor Swift Merchandise consisting of a short sleeve top and hooded sweatshirts.**



**Depicting Taylor Swift Merchandise consisting of vinyl slip mats and mugs.**

*See also* **Exhibit I** (depicting photographs of additional sample Taylor Swift Merchandise offered by Plaintiff during The Tour).

91.     The Taylor Swift Merchandise is of high quality and grade and has been manufactured according to strict quality and aesthetic standards.

92.     Plaintiff has taken and continues to take diligent efforts to prevent, and actively pursue enforcement against, the sale of merchandise marked with counterfeit and/or infringing versions of the SWIFT Trademarks.

93.     Since the conclusion of Civil Action No. 3:18-cv-0393 before this Court, and continuing until and after issuance of this Court's Seizure Order and Extended Seizure Order, Counterfeit Goods bearing the Registered SWIFT Trademarks have continued to appear at numerous outlets over the Internet, including on major online marketplaces.  Plaintiff has implemented and continues to implement a strong monitoring and enforcement program against such counterfeiting.  In 2022 alone, Plaintiff removed more than 20,000 infringing products from online marketplaces.  In 2023 alone, Plaintiff removed more than 450,000 infringing products from online marketplaces.  In 2024, Plaintiff has removed more than 3,620,000 infringing products from online marketplaces.

94.     Plaintiff has also recorded the TAYLOR SWIFT Trademarks with the Department of Homeland Security ("DHS") to allow DHS to more effectively scan for counterfeit products at the U.S. border.

95.     Based on the sale, offering for sale, and distribution of unauthorized products bearing counterfeit versions of the Registered SWIFT Trademarks by named and numerous unnamed defendants during the Tours, on the continued offering for sale and distribution of the counterfeit goods on online marketplaces, and because Plaintiff expects that numerous individuals will distribute, sell, and offer for sale, products bearing counterfeit versions of the Registered SWIFT Trademarks at concert venues during The Tour (identified in Ex. H), and as far away as

18

20 miles from those concert venues; these named individuals and other similarly situated individuals and entities, whose true names, capacities, and addresses not known to Plaintiff, are identified in this Verified Amended Complaint as John/Jane Does 1–109.

96.     Defendants have and will manufacture, distribute, offer for sale, and/or sell counterfeit goods bearing the Registered SWIFT Trademarks in connection with The Tour, and have engaged in such activities in preparation for The Tour.

97.     Defendants are not authorized to manufacture, distribute, offer for sale, or sell any products and/or merchandise bearing Ms. Swift's image or likeness and/or any of the SWIFT Trademarks.

98.     Based on past experience at concert venues on Ms. Swift's Tours, the design, materials, and quality of the counterfeit goods sold by Defendants are and will be of poor quality.

99.     The Counterfeit Goods do not, and will fail to, comply with the quality and style standards established by Plaintiff for the Taylor Swift Merchandise, and the Counterfeit Goods will be priced lower than the authentic Taylor Swift Merchandise.

100.     Based on past experience at concert venues on Ms. Swift's Tours, including The Tour, the Counterfeit Goods have been and will be largely uniform from concert-to-concert and city-to-city, as many Defendants have sold and will sell the same counterfeit goods in different cities, traveling from one concert venue to the next.

101.     Counterfeit Goods bearing the Registered SWIFT Trademarks and/or unauthorized use of the name, photograph, or likeness of Ms. Swift have already and will likely feature designs and/or images of the same general nature and type as the genuine and authorized Taylor Swift Merchandise, and Defendants' use of the Registered SWIFT Trademarks has and will amount to use of a counterfeit mark, and has and will cause confusion, cause mistake, and/or deceive

19

consumers into believing that the counterfeit goods and/or merchandise are associated with, sponsored, or endorsed by Plaintiff, when they are not.

102.    Defendants are currently, and will continue to manufacture, distribute, offer for sale, and sell Counterfeit Goods unless enjoined.

### The Harm to the SWIFT Trademarks

103.    Defendants' counterfeiting and infringement deprives Plaintiff of sales, revenues, and profits it would have earned but for the counterfeiting/infringement.

104.    Defendants' counterfeiting and infringement harms the reputation for the quality of the Taylor Swift Merchandise distributed under the SWIFT Trademarks.

105.    Defendants' counterfeiting and infringement jeopardizes the goodwill and value associated with Ms. Swift, the SWIFT Trademarks, and associated common-law rights, which Plaintiff has built up and carefully protected over the years.

106.    Defendants' counterfeiting and infringement dilutes the distinctive quality of the SWIFT Trademarks and tarnishes the reputation of those trademarks, damaging their goodwill.

107.    Consumers deceived by Defendants' counterfeit Taylor Swift Merchandise have, and will, purchase Defendants' Counterfeit Goods by mistake.

108.    These same consumers are likely to think less favorably of Plaintiff and Ms. Swift than if they had purchased the high-quality authentic Taylor Swift Merchandise, as they no doubt intended to do.

109.    Plaintiff has suffered and, unless Defendants' conduct is enjoined by this Court, will continue to suffer, actual economic damages in the form of lost sales, revenues, and profits, and immediate and irreparable harm to the aforementioned trademarks, and goodwill, for which it has no adequate remedy at law.

110.     In addition to causing irrecoverable and innumerable lost sales, Defendants' actions will irreparably injure the TAYLOR SWIFT® brand's reputation for high-quality products and services, and will cause dilution of the SWIFT Trademarks by blurring and by tarnishment.

111.     Prior to and in the absence of a Seizure Order, local law enforcement officers will not extend cooperation to Plaintiff for its anti-counterfeiting enforcement efforts on The Tour; however, local law enforcement officers have and will properly execute and enforce the Orders of this Court enjoining distribution, offering for sale, and the sale of counterfeit goods, and authorizing seizure of goods and/or merchandise bearing counterfeit versions of the Registered SWIFT Trademarks.

112.     Upon information and belief, Defendants are likely to become violent as a result of Plaintiff's anti-counterfeiting enforcement efforts without the proper support from local law enforcement.

113.     There are many more sellers of goods and/or merchandise bearing counterfeit versions of the Registered SWIFT Trademarks at the concert venues than Plaintiff can address absent an order of injunction authorizing law enforcement to seize the counterfeit goods because, in absence of such an order, Defendants will not voluntarily turn over the counterfeit goods and will not cease the distribution, offering for sale, or sale of them.

114.     Since Defendants will not identify themselves absent such an order, Defendants will be able to avoid responding to an ordinary civil lawsuit and, in this way, will be essentially immune from any injunctive and/or monetary liability.  Any Defendants who may be identified and served with process may be ordered to appear at the hearings and participate in the conferences scheduled by the Court, and to timely respond to pleadings and motions.  However, as the Court's records indicate in Case Nos. 3:09-cv-00442, 3:11-cv-0477, 3:13-cv-00170, 3:15-cv-00589, 3:18-

cv-0393, and this Action, such Defendants will likely not appear, and in-fact did not appear, as directed by the Court, and the mail and the service copies addressed to Defendants were and will likely be returned as "undeliverable" or "unclaimed."

115.    For these reasons, the only adequate means of protecting the Registered SWIFT Trademarks on The Tour is by authority to enjoin the distribution, sale, and offering for sale, and to seize, the goods and/or merchandise bearing counterfeit versions of the Registered SWIFT Trademarks.

116.    Upon information and belief, without the aid of a federal court order enjoining the distribution, sale, and offering for sale of the Counterfeit Goods and authorizing their seizure, at and near The Tour concert venues, Plaintiff will lose innumerable and irrecoverable sums in merchandise sales and will suffer incalculable, irreparable damages to its reputation and goodwill. This harm will be in addition to the harm that such counterfeiting will cause to the consuming public by being deceived into believing the counterfeit goods are related to Ms. Swift and her brand when they are not.

117.    Defendants have and will continue to engage in the manufacture, distribution, marketing, and the sale of counterfeit goods and/or merchandise bearing the Registered SWIFT Trademarks, in this State and elsewhere in interstate commerce, and did continue these activities during The Tour throughout the United States.

**FIRST CLAIM FOR RELIEF**

**FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

118.    Plaintiff realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

22

119.    In violation of 15 U.S.C. § 1114, Defendants will and have used in commerce, without Plaintiff's consent, either a reproduction, counterfeit, copy, or colorable imitation of one or more of the Registered SWIFT Trademarks on and in connection with the sale, offering for sale, distribution, or advertising of counterfeit Taylor Swift Merchandise, which use by Defendants is likely to cause confusion, or to cause mistake, or to deceive consumers.

120.    Defendants' actions, described above, constitute willful infringement of Plaintiff's exclusive rights in and to the Registered SWIFT Trademarks, which are registered on the Principal Register and have been continuously used as source identifiers since the respective marks' dates of first use, and Plaintiff has exclusive nationwide rights to enforce.

121.    As a direct and proximate result of Defendants' willful misconduct, there has been irreparable harm to the value and goodwill associated with the Registered SWIFT Trademarks and the TAYLOR SWIFT® brand's reputation in the industry and among consumers.   Unless Defendants are restrained from further infringement of the Registered SWIFT Trademarks, Plaintiff and consumers will continue to be irreparably harmed.

122.    Plaintiff has no adequate remedy at law that could compensate it for the continued, irreparable harm that it is suffering, and will suffer if Defendants' willful misconduct is allowed to continue.

123.    As a direct and proximate result of Defendants' willful misconduct, Plaintiff has also suffered monetary damages to the valuable Registered SWIFT Trademarks and other damages in an amount not yet known, but to be proved at trial.  Plaintiff is also entitled to statutory damages, trebled damages, and/or its reasonable attorneys' fees, at its option.

## SECOND CLAIM FOR RELIEF

## TRADEMARK INFRINGEMENT (15 U.S.C. § 1125(a))

124.     Plaintiff realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

125.     Defendants' use of the SWIFT Trademarks and/or of any words, terms, names, symbols of devices that are confusingly similar to the SWIFT Trademarks constitutes infringement of Plaintiff's rights in the SWIFT Trademarks in violation of 15 U.S.C. § 1125(a).

126.     On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, and intentional, and in disregard of Plaintiff's rights.

127.     Defendants' conduct has and will injure Plaintiff and, unless restrained and enjoined, will continue to do so, causing Plaintiff irreparable harm and monetary damage.

128.     Plaintiff is entitled to an injunction enjoining Defendants from any further use in commerce of the SWIFT Trademarks, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this Action, Plaintiff's reasonable attorney's fees, and three times the amount of Plaintiff's actual damages, and to an order for destruction of goods pursuant to 15 U.S.C. §§ 1125(a), 1117(a), and 1118.

## THIRD CLAIM FOR RELIEF

## TRADEMARK DILUTION (15 U.S.C. § 1125(c))

129.     Plaintiff realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

130.     Defendants' use of copies or simulation of the SWIFT Trademarks on counterfeit goods and/or merchandise constitutes dilution by blurring that impairs the distinctiveness of the

SWIFT Trademarks, and dilution by tarnishment, and harms the reputation of the SWIFT Trademarks, in violation of 15 U.S.C. § 1125(c).

131.    On information and belief, Defendants' conduct has been or will be malicious, fraudulent, deliberate, willful, and intentional, and in disregard of Plaintiff's rights.

132.    Defendants' conduct has and will injure Plaintiff and, unless restrained and enjoined, will continue to do so, causing Plaintiff irreparable harm and monetary damage.

133.    Plaintiff is entitled to an injunction enjoining Defendants from any further acts of dilution of the SWIFT Trademarks; to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this Action, Plaintiff's reasonable attorney's fees, and three times the amount of Plaintiff's actual damages; and to an order for destruction of goods and/or merchandise bearing counterfeit versions of the SWIFT Trademarks, pursuant to 15 U.S.C. §§ 1116(a), 1117(a), 1118 and 1125(c)(1).

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT OF 1977 (TENN. CODE ANN. § 47-18-101 *et seq.*)

134.    Plaintiff realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

135.    Defendants' actions and omissions referenced above have and will constitute violations of the Tennessee Consumer Protection Act of 1977, TENN. CODE. ANN. § 47-18-101 *et seq.*, including, without limitation, TENN. CODE ANN. §§ 47-18-104(a), (b)(1), (2), (3), (5), (6), (7), (9), and (22).

136.    Plaintiff has been and will continue to be damaged by Defendants' violations of the Tennessee Consumer Protection Act.

137.    On information and belief, Defendants' use or employment of unfair or deceptive acts or practices is a willful or knowing violation of the Tennessee Consumer Protection Act, entitling Plaintiff to an award of three times the amount of actual damages sustained by Plaintiff and such other relief as the Court considers necessary and proper, pursuant to TENN. CODE ANN. § 47-18-109(a)(3).

138.    Defendants' violations of the Tennessee Consumer Protection Act entitle Plaintiff to an award of its reasonable attorney's fees and costs, pursuant to TENN. CODE ANN. § 47-18-109(e)(1).

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF TENNESSEE PERSONAL RIGHTS PROTECTION ACT OF 1984**
**(TENN. CODE ANN. § 47-25-1101 *et seq.*)**

139.    Plaintiff realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

140.    Defendants have knowingly used and infringed upon the use of the name, photograph, and likeness of Taylor Swift, as items of commerce for purposes of advertising products, merchandise, and goods, without Plaintiff's prior consent.

141.    Defendants' actions and omissions constitute violations of the Tennessee Personal Rights Protection Act of 1984, TENN. CODE. ANN. § 47-25-1101 *et seq.*, including, without limitation, TENN. CODE ANN. § 47-18-1105.

142.    Plaintiff has been damaged by Defendants' violations of the Tennessee Personal Rights Protection Act.

143.    Plaintiff is entitled to an injunction preventing and restraining Defendants' unauthorized use of the name, photograph, or likeness of Ms. Swift; to an order impounding all materials or any part thereof made or used in violation of Plaintiff's rights, and enjoining the use

26

of all plates, molds, matrices, or other articles by means of which such materials may be reproduced; and to an order of the destruction of other reasonable disposition of all such materials, pursuant to TENN. CODE ANN. § 47-25-1106.

144.     On information and belief, Defendants' use of Ms. Swift's name, photograph, or likeness has been and will continue to be a willful or knowing violation of the Tennessee Personal Rights Protection Act, entitling Plaintiff to an award of Plaintiff's actual damages and any profits attributable to Defendants' infringement on Ms. Swift's personal rights, together with all other remedies afforded by the Act and pursuant to TENN. CODE ANN. § 47-25-1106, in addition to any other damages awarded by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1.     For judgment that:

   a.   Defendants have violated Section 32 of the Lanham Act, 15 U.S.C. § 1114;

   b.   Defendants have violated Section 43 of the Lanham Act, 15 U.S.C. § 1125(a);

   c.   Defendants have violated Section 43 of the Lanham Act, 15 U.S.C. § 1125(c);

   d.   Defendants have violated the Tennessee Consumer Protection Act of 1977, TENN. CODE ANN. § 47-18-101 *et seq.*;

   e.   Defendants have violated the Tennessee Personal Rights Protection Act of 1984, TENN. CODE ANN. § 47-25-1101 *et seq.*; and

   f.   In all instances, Defendants acted in bad faith, willfully, intentionally, and/or in malicious disregard of Plaintiff's rights.

2.     For an order that all counterfeit Taylor Swift Merchandise, or any other merchandise or products bearing without authorization the Registered SWIFT Trademarks found

27

in the possession, custody, or control of Defendants within a twenty-mile vicinity of any concert venues at which Ms. Swift will be performing during The Tour, during and within twenty-four hours before and/or after each performance, be seized until a hearing can be held before this Court to determine the disposition of any goods so seized;

3. For an order that any and all means of making counterfeit Taylor Swift Merchandise and any and all records documenting the manufacture, sale, or receipt of things involved in the sale, offering for sale or distribution of the counterfeit Taylor Swift Merchandise, be seized until a hearing can be held before this Court to determine the disposition of any record so seized;

4. For an order that (a) all counterfeit Taylor Swift Merchandise and all plates, molds, matrices, and other means or articles of making or reproducing the same, found in possession, custody, or control of Defendants, and (b) any goods seized pursuant to this Court's orders, be delivered up to be held in the custody of the Court, pending the outcome of this Action;

5. For an order that all goods seized pursuant to this Court's orders be destroyed;

6. For an order enjoining Defendants, their affiliates, subsidiaries, parents, and their respective officers, agents, servants, attorneys, and employees, and all other persons in active concert or participation with them, and mandating that Defendants forever cease and desist and refrain from, anywhere in the United States:

   a. Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any counterfeit or infringing products featuring the Registered SWIFT Trademarks, including but not limited to Taylor Swift Merchandise bearing:

28

i. Infringing or counterfeit versions of the Registered SWIFT Trademarks, which devices appear alone or in combination on authentic Taylor Swift Merchandise distributed by Plaintiff in the United States;

ii. Unauthorized use of the name, photograph, or likeness of Ms. Swift; or

iii. The false representation that such products are distributed by Plaintiff or otherwise under Plaintiff's control or supervision, when they are not;

b. Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any products bearing the Registered SWIFT Trademarks that are not actually produced, imported, or distributed under Plaintiff's control or supervision, or approved for sale in the United States by Plaintiff in connection with the Registered SWIFT Trademarks or unauthorized use of the name, photograph, or likeness of Ms. Swift;

c. Committing acts calculated to cause purchasers to believe that counterfeit or infringing products featuring the Registered SWIFT Trademarks, including counterfeit Taylor Swift Merchandise, originate with Plaintiff when they do not;

d. In any way infringing or damaging the SWIFT Trademarks and associated common-law rights, or the value or goodwill associated therewith;

e. Attempting, causing, or assisting in any of the above-described acts, including but not limited to, enabling others in the above-described acts or passing on information to allow them to do so;

f. Destroying, altering, deleting, or otherwise disposing of any documents, records, or electronically stored information concerning the manufacturing, making, buying,

29

purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or other distribution or disposal of any product that has been, or is intended to be, sold in packaging containing, displaying, or bearing the Registered SWIFT Trademarks; or unauthorized use of the name, photograph, or likeness of Ms. Swift; and

g. Forming or causing to be formed any corporation or other entity that engages in the above-described acts.

7. For an order requiring Defendants to cooperate with Plaintiff in good faith in its investigation of counterfeit sales, including, without limitation by:

a. Permitting Plaintiff's representatives or their designees to conduct inspections of Defendants' inventories of purported Counterfeit Goods to determine if any such products are counterfeit or otherwise infringing, and permitting Plaintiff's representatives to obtain and retain possession of any such Counterfeit Goods;

b. Responding to reasonable requests for information about Defendants' source(s) of Counterfeit Goods; and

c. Cooperating with Plaintiff's representatives or its designees in its investigations of any source(s) of Counterfeit Goods.

8. For an order:

a. Requiring Defendants to account for and pay over to Plaintiff all profits derived from their wrongful misconduct to the full extent provided for by Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a);

b.  Requiring Defendants to account for and pay to Plaintiff enhanced damages resulting from their wrongful misconduct to the full extent provided for by Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b);

c.  Awarding Plaintiff damages, or statutory damages in an amount not less than $2 million ($2,000,000) per trademark pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c);

d.  Awarding Plaintiff damages to the full extent provided by Tennessee law;

e.  Awarding Plaintiff its costs of suit, including reasonable attorneys' fees and investigation costs; and

f.  Awarding such other and further relief as this Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.


DATED: February 27, 2025

Respectfully submitted,

TAS Rights Management, LLC

By: *Katherine Wright Morrone*
Katherine Wright Morrone
J. Douglas Baldridge (BPR No. 038188)
Sara Talebian (admitted *pro hac vice*)
Venable LLP
600 Massachusetts Ave, NW
Washington, D.C. 20001
Tel: (202) 344-4000
Fax: (202 344-8300
kwmorrone@venable.com
jbaldridge@venable.com
stalebian@venable.com

*Attorneys for Plaintiff*
*TAS Rights Management, LLC*

31

## VERIFICATION

I, John R. Dorris, Jr., declare that I am a Vice President for TAS Rights Management, LLC, and am properly authorized to verify the foregoing Verified Amended Complaint on behalf of the Plaintiff, that I have read the foregoing Verified Amended Complaint, that the facts that relate or refer to TAS Rights Management, LLC and Taylor Swift are true and correct to the best of my knowledge, and that all statements made on information and belief are believed to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on February 26, 2025.

_____
John R. Dorris, Jr.
Vice President
TAS Rights Management, LLC

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing Verified Amended Complaint is being accomplished this February 27, 2025, through delivery by First Class U.S. Mail, postage pre-paid upon Defendants[2]:

Lilia Katerine Bedoya
Agudelo
1505 E 10th Street, Apt H
Long Beach, CA 90813

Thomas Bamberger
41 Arrowhead Lane
East Setauket, NY 11733

Alberto A Loredo Barros
11019 N Kendall Drive
Apt K203
Miami, FL 33170

Reginald Blocker Jr.
373 N Meadow Drive
Willis, TX 77378

David Castelan
3900 Calibre Bend Lane
Apt 708
Winter Park, FL 32792

John Paul Clark
11310 SE Brookside Drive
Portland, OR 97266

Bobby Ray Criss
149 Cyrus Street
Marco Island, FL 34145

Anthony Dais
1222 N Shortridge Road
Indianapolis, IN 46219

Daniel Dardov
14639 Canyon View Drive
Apt A
Delray Beach, FL 33404

Delcid Canales Eliezer
880 N Alameda St., #220
Los Angeles, CA 90012

Edgar Ivan Ramirez Garcia
3555 East 4th Street
Los Angeles, CA 90063

Frank Guerro
2961 SW 52nd Ave
Davie, FL 33314

Jonathan Jacob Hearn
430 Harris Road
Richmond Heights, OH
44143

Thomas Donald Ingram
3279 Missouri Terrace
North Port, FL 34291

Kyle James
7912 Forest Hill Drive
Houston, TX 77017

Alex Keane
871 SW 10 St
Pompano Beach, Florida
33060

Braulio A. LaGrange
1765 Townsend Ave
Apt 5A
Bronx, NY 10453

Antwan Bryant McDaniel
5423 2nd Ave
Los Angeles, California
90043

Darryl Mulligan
3127 Chartiers Ave
Pittsburgh, PA 15204

Lionel Nelson
1710 Navarro Ave
Pasadena, CA 91103

Kimberly Pauszek
2301 Whispering Drive
Indianapolis, IN 46239

Romeo Ramos
6937 Aloma Ave
Apt 6T
Winter Park, FL 32792

---

[2] The service list herein identifies all named Defendants who gave their true identities and provided an address. Four named Defendants who gave their true identities and all 109 John/Jane Doe Defendants did not provide their respective addresses despite their obligation to do so in the Court's Seizure Order or Extended Seizure Order.

33

Tyrone Squires
3050 Park Ave
Bronx, NY 10451

Russell Thrailkill
303 N Hill Ave, Apt 1
Pasadena, CA 91106

Frisco David Torres
3920 W Iowa Ave
Tampa, FL 33616

Javen Isidro Velasquez
1914 N 14th Street
Lamesa, TX 79331

Benjamin Walker
7315 S. Halldale
Los Angeles, CA 90047

Kiren West
1064 Carroll Place
Apt 6C
Bronx, NY 10456

Ruth White
14210 Dixie
Redford, MI 48239

*/s/ Katherine Wright Morrone*
Katherine Wright Morrone